IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ALLEN PEPPER,<br><br>              Petitioner,<br><br>   vs.<br><br>JAMES A. YATES,<br><br>             Respondent. | Case No. 2:08-cv-00282 (JKS)<br><br>MEMORANDUM DISPOSITION |

Petitioner, Gregory A. Pepper, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Pepper is currently in custody of the California Department of Corrections, incarcerated at the Pleasant Valley State Prison in Coalinga, California. Respondent has answered.[1] Pepper has not filed a traverse.

        I.        FACTUAL BACKGROUND

The following factual background is taken from the reasoned decision of the California Court of Appeal in this case:

> In January 1999, N., age 11, and B., age 8, along with their mother, father and younger brother, moved to undeveloped land in Nevada County. From January until approximately August 1999, the family lived in a 10-foot by 16-foot, one-room cabin with a loft. The mother and father slept in the loft, while the children slept

---

[1] Docket No. 11.

below in sleeping bags.  Beginning in May 1999, N. and B. regularly slept in a tent located about 15 feet outside the cabin, within the mother's earshot.  In August 1999, the family moved from the cabin into an 8-foot by 32-foot travel trailer.  The mother and father slept at one end of the trailer and the children slept at the other end.

[Pepper] was a longtime friend of the father.  [Pepper] regularly visited the property and, between July and October 1999, often stayed the entire weekend.  When he visited in July and August 1999, he slept "downstairs" in the cabin or in the tent.  After the family moved into the travel trailer, [Pepper] slept inside the trailer on a cot.

[Pepper] began engaging in sexual acts with N. while the family was living in the cabin.  He began by reaching inside N.'s sleeping bag and fondling N.'s penis.  Later, [Pepper] "performed oral sex" on N.  N. estimated [Pepper] performed oral sex on him "every other night" [Pepper] visited while the family was living in the cabin.  The frequency of the sexual acts increased when N. and B. began sleeping in the tent. In addition to [Pepper] fondling and performing oral sex on N., [Pepper] "was having [N.] perform similar acts on him."  N. refused [Pepper's] requests to have "anal sex"; however, [Pepper] "would stick his penis in between [N.'s] butt cheeks" and "rub his penis back and forth."  The fondling and oral sex continued after the family moved into the trailer, but the "simulated" anal sex did not.  B. "was not always there" when [Pepper] engaged in sexual activity with N.; sometimes [Pepper] and N. were alone.  B. never saw anything "inappropriate" occur between [Pepper] and N. when the three of them were in the tent.

[Pepper] began engaging in sexual acts with B. approximately one month after the family moved into the trailer.  [Pepper] forced B. "to give him head" approximately eight times, and [Pepper] "put his mouth on [B.'s] penis" approximately eight times.  In addition, [Pepper] touched B.'s penis and "masturbate[d]" him about five times and B. did the same to [Pepper] about five to eight times.  [Pepper] also put his penis in B.'s "butt" one or two times and asked B. to do the same.  All of the sexual acts involving B. occurred at night in the trailer while N. was sleeping two feet away and the mother and father were sleeping 30 feet away.

The mother never heard anything "suspicious" or saw anything "inappropriate" when [Pepper] slept near the children.  While the children were within the mother's earshot, sometimes it was difficult for her to hear because the father "snore[d] ferociously."

N. and B. told their father about the sexual acts involving [Pepper] in January 2004, and the family reported the incidents to the Nevada County Sheriff's Department.

[Pepper] did not testify at trial.  The defense was that the sexual acts never occurred.  During her closing argument, defense counsel pointed to

2

>inconsistencies in N.'s and B.'s testimony and argued that had the sexual acts occurred, someone, in particular the mother, would have heard or seen something.[2]

## II.     BACKGROUND/ PRIOR PROCEEDINGS

Pepper was charged with one count of continuous sexual abuse of a child (Cal. Penal Code § 288.5) (count 1) and four counts of lewd or lascivious acts on a child (Cal. Penal Code § 288(a)) (counts 2-5). Each count included an allegation of substantial sexual conduct with a child under age 14 (Cal. Penal Code § 1203.066(a)(8)). It was further alleged that Pepper had previous convictions for committing a lewd act on a child and indecency with a child, both serious and violent felonies (Cal. Penal Code §§ 667(b)-(i), 1170.12(a)). On February 17, 2005, the jury found Pepper guilty of all charges. The jury also found that Pepper had engaged in substantial sexual conduct with a child under age 14. Pepper waived a jury trial on his previous convictions, and the trial court found the two prior convictions to be true.

On June 17, 2005, the trial court sentenced Pepper to state prison for twenty-five years to life for the crime of continuous sexual abuse of a child on Count 1. The court doubled the sentence pursuant to Cal. Penal Code §§ 667(b) through (i) and 1170.12, for a total term of fifty years to life. On each of Counts 2 through 5, the court sentenced Pepper to a consecutive state prison term of twenty-five years to life. Each sentence was doubled pursuant to Cal. Penal Code §§ 667(b) through (i) and 1170.12, and an additional five-year term was added to each sentence pursuant to Cal. Penal Code § 667.51. Pepper's total prison term was 270 years to life.

---

[2] Lodged Doc. No. 6, pp. 2-4. These facts are presumed to be correct under 28 U.S.C. § 2254. Pepper has not challenged the veracity of these facts in his petition to this Court.

Pepper appealed his conviction to the Court of Appeal for the State of California, Third Appellate District, alleging: 1) the prosecutor committed prejudicial misconduct by referring to evidence as "uncontroverted" during closing argument, and; 2) the trial court erred in imposing multiple, five-year enhancements based on a single prior conviction. The Court of Appeal affirmed the conviction and the sentence in a reasoned decision on November 22, 2006.

On December 26, 2006, Pepper filed a petition for review in the Supreme Court of California, which was denied on May 23, 2007.

On February 8, 2008, Pepper filed the current Petition in this Court. Respondent has answered. Pepper has not submitted a traverse.

In his petition to this Court, Pepper only raises one ground for relief. Pepper claims that the prosecutor violated Pepper's Fifth Amendment right against self-incrimination by improperly calling attention to the fact that Pepper did not testify at his trial. Specifically, Pepper claims that the prosecutor committed an error by referring to evidence as "uncontroverted" during her closing argument. Responded has not raised any affirmative defenses.

### III.   STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence

4

presented in the State court proceeding."³ The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."⁴ The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.⁵ Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"⁶ When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.⁷ The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.⁸ In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is

---

³ 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

⁴ *Williams*, 529 U.S. at 412.

⁵ *Early v. Packer*, 537 U.S. 3, 10 (2002).

⁶ *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

⁷ *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

⁸ *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

5

whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[9]

In applying this standard, this Court reviews the last reasoned decision by the state court,[10] which in this case was that of the California Court of Appeal. Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[11]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[12] The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. Only by that examination may we determine whether the state court's decision was objectively reasonable.[13]

---

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[10] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[11] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[12] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[13] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[14]

Pepper has not filed a traverse.  28 U.S.C. § 2248 provides:

"The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  Under § 2248, where the is no denial of the Respondent's allegations in the answer, or the denial is merely formal unsupported by an evidentiary basis, the court must accept Respondent's allegations.[15]  Where a petitioner has not disputed a contention in the response and it does not appear from the record before the court that the contention is erroneous, the court may accept that contention.[16]

## IV.   DISCUSSION

Pepper claims that the prosecutor violated his Fifth Amendment right against self-incrimination by referring to evidence as "uncontroverted" during closing arguments.  As mentioned above, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[17]

---

[14] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[15] *See Carlson v. Landon*, 342 U.S. 524, 529 (1952).

[16] *Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

[17] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

In *Griffin v. California*,[18] the Supreme Court held that the Due Process Clause prohibits a prosecutor from directly commenting on a defendant's decision not to testify. However, the Supreme Court has also held that "the protective shield of the Fifth Amendment should [not] be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case."[19] Thus, the Supreme Court has not held that *Griffin*'s prohibition applies to indirect comments made by the prosecution that may have the secondary effect of calling the jury's attention to the defendant's failure to testify.[20]

In extrapolating *Griffin* and its progeny, several circuit courts have held that "while a direct comment about the defendant's failure to testify always violates *Griffin*, a prosecutor's indirect comment violates *Griffin* only if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify."[21] In making this determination, "[c]ourts have distinguished between those cases in which the defendant is the sole witness who could possibly offer evidence on a particular issue, and those cases in which the information is available from other defense witnesses as well."[22]

---

[18] 380 U.S. 609, 615 (1965).

[19] *United States v. Hasting*, 461 U.S. 499, 515 (1983) (Stevens, J., concurring) (citation omitted).

[20] *See United States v. Robinson*, 485 U.S. 25, 32 (1988) ("[W]here as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege . . . .").

[21] *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir.1987); *see Yancey v. Gilmore*, 113 F.3d 104, 106-07 (7th Cir. 1997) (holding that Griffin applies only to direct comment by the prosecutor on a defendant's failure to testify and that indirect references are not impermissible under the AEDPA).

[22] *Lincoln v. Sunn*, 807 F.2d 805, 810 (9th Cir. 1987).

In cases where the "defendant and a government witness were the only two persons at the scene of a crime, and therefore the defendant is the only witness who could rebut or negate the government witness's testimony, prosecutorial comment suggesting that the jury should have heard more testimony can only cause the jury to naturally look to the only other evidence there is-the defendant-and, hence, this could be a prohibited comment on the defendant's failure to testify."[23] Conversely, in cases where a witness other than the defendant could have contradicted evidence against the defendant, a general reference to the evidence as 'uncontradicted' does not necessarily reflect on the defendant's failure to testify.[24] In these cases, the "prosecutorial comment must be examined in context"[25] to determine whether the comment was "manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify."[26]

In the present case, the defense theory presented at trial was that the sexual acts did not occur.[27] In fact, the children's mother testified that she never heard anything "suspicious" or saw anything "inappropriate" when Pepper slept near the children.[28] On appeal, defense counsel noted

---

[23] *Id* (internal quotations omitted).

[24] *See id*; *see also Byrd v. Collins*, 209 F.3d 486, 534 (6th Cir. 2000); *see also Williams v. Lane*, 826 F.2d 654, 665 (7th Cir. 1987) ("Prosecutorial references to 'uncontradicted' testimony are more readily deemed indirect references to the defendant's failure to testify in cases where it is 'highly unlikely that at least a portion of the testimony could have been contradicted by anyone other than the defendant'") (quoting *United States v. Buege*, 578 F.2d 187, 189 (7th Cir. 1978)).

[25] *Lockett v. Ohio*, 438 U.S. 586 (1978).

[26] *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006) (citing *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir.1987)).

[27] Lodged Doc. No. 6, p. 4.

[28] Lodged Doc. No. 6, p. 7.

9

that no prosecution witness who was sleeping near N. during the alleged acts said that the acts did not occur.[29]  While this may be true, the Court of Appeal stated that Pepper *could have* called the children's father to contradict the children's testimony that Pepper molested them.[30]  Thus, because Pepper was not the only witness available to contradict the children's testimony, the prosecution's comment that the evidence was "uncontradicted" was only improper under *Griffin* if it was "manifestly intended to call attention to the defendant's failure to testify."[31]

 The Court of Appeal found that the prosecution's comment, when taken in context, was a comment regarding the entire state of the evidence and not an impermissible comment on Pepper's failure to testify at trial.[32]  In his petition to this Court, Pepper offers no evidence that this finding is erroneous, and an independent review by this Court reveals none.  After reviewing the record, this Court notes that during many of the sexual encounters, there were as many as four people present.[33]  Thus, it is much more likely that the comment that the evidence was "uncontroverted" simply called attention to the fact that the children's testimony was not contradicted by the other individuals who were present during some of the sexual encounters.  Furthermore, the comment served to counter

---

[29] Lodged Doc. No. 6, p. 7.

[30] Lodged Doc. No. 6, p. 7.  The Court of Appeal noted that the father was present in the same room during at least some of the sexual acts and was not called by the prosecution.  Therefore, the defense could have called him to testify.  Indeed the Court of Appeal concluded that if the father had testified consistent with the mother and B. that he did not hear or see anything inappropriate occur between Pepper and N. his testimony could be used to contradict the prosecution's case.

[31] *Hovey*, 458 at 912.

[32] Lodged Doc. No. 6, p. 7.

[33] Defense counsel made this observation in her closing argument.

defense counsel's attempts to undermine N.'s and the mother's credibility during cross-examination.

As noted above, the Supreme Court has not extended *Griffin*'s prohibition to indirect comments that may have the secondary effect of calling the jury's attention to the defendant's failure to testify.[34] Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[35] Therefore, this Court cannot say that the decision of the California Court of Appeal, which was consistent with circuit law on the issue, was contrary to, or involved an unreasonable application of the relevant Supreme Court decisions.[36]

Even if the prosecutor's comment did rise to the level of a *Griffin* error, it would not warrant reversal. "Reversal is warranted only where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal."[37] "Conversely, courts will not reverse when the prosecutorial

---

[34]   *See United States v. Robinson*, 485 U.S. 25, 32 (1988) ("where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege"); *see also Yancey v. Gilmore,* 113 F.3d 104, 106-07 (7th Cir. 1997) (holding that *Griffin* applies only to direct comment by the prosecutor on a defendant's failure to testify and that indirect references are not impermissible under the AEDPA).

[35] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[36] *Musladin*, 549 U.S. at 74; *see Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009).

[37]  *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006) (internal citations omitted).

comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions."[38]

In the present case, the prosecutor made a single isolated statement in her closing argument.[39] She did not ask the jury to draw an inference of guilt based on the fact that Pepper did not testify. Finally, the court instructed the jury twice that they were not to draw any inference of guilt from Pepper's decision not to testify.[40] The court further advised the jury to disregard any comments by counsel to the contrary. It is presumed "that juries follow their instructions."[41] Pepper has not challenged any of these findings, nor has he offered any evidence that the comment had a "substantial and injurious effect" on the jury's verdict.[42] Accordingly, even if the prosecution's comment did constitute a *Griffin* error, there is no evidence that it affected the verdict in any manner. Pepper is not entitled to relief on his petition.

### V.   CONCLUSION and ORDER

Pepper is not entitled to relief under any ground raised in the petition. Accordingly,

---

[38] *Lincoln*, 807 F.2d at 809 (internal citations omitted).

[39] *See Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006), *cert. denied*, (disputed comment "was neither flagrant nor repeated").

[40] *See Hovey,* 458 F.3d at 913 (jury instructions were a factor that made *Griffin* error harmless); *see also Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (Single, isolated "comment, while improper, could not have had substantial and injurious effect upon the verdict. It was made once and not repeated. It was not the theme of the prosecutor's closing argument. It ran counter to the trial court's instructions, and the jury is presumed to have followed those instructions.").

[41] Hovey v. Ayers, 458 F.3d 892, 913 (9th Cir. 2006) (referencing *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985)).

[42] *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); *see also Fry v. Pliler,*___ U.S. ___, 127 S. Ct. 2321, 2328 (2007) (holding that the *Brecht* standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** this Court declines to issue a Certificate of Appealability. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[43]

The Clerk of the Court to enter judgment accordingly.

Dated: March 31, 2011

          /s/ James K. Singleton, Jr.
      **JAMES K. SINGLETON, JR.**
         United States District Judge

---

[43] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.